# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

|  |  |
|---|---|
| JASON FRY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company,<br><br>Defendants. | Case No: 22-CV-140<br>Judge:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT
### For Violation of Indiana Right of Publicity and Misappropriation of Name and Likeness

Plaintiff JASON FRY, by and through his attorneys, makes the following allegations on information and belief, except as to factual allegations pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF ACTION

1.  Plaintiff Jason Fry ("Plaintiff") and members of the proposed class (the "Class" or "Class members") seek damages, an injunction, and additional relief from Defendants ("Ancestry" or "Ancestry.com"), which own and operate the website www.ancestry.com. Ancestry used Plaintiff's and Class members' names and personalities to promote paid subscriptions to the Ancestry website without consent in violation of Indiana's right of publicity statute, Ind. Code § 32-36-1, and Indiana common law prohibiting misappropriation of a name or likeness.

2.  Plaintiff and Class members are private individuals who have no relationship with Ancestry. Plaintiff and the Class have never used Ancestry.com, nor did they provide their names,

photographs, or any other personal information to Ancestry.

3. Plaintiff was seriously distressed to discover that Ancestry is using decades-old photographs of Plaintiff and the Class as children to advertise paid subscriptions to Ancestry.com.

4. Plaintiff and the Class did not consent to Ancestry using their names, photographs, and personalities to promote Ancestry.com subscriptions.

5. Ancestry uses Plaintiff's and Class members' names and likenesses in at least three advertising techniques. In all three advertising techniques, Ancestry displays the Plaintiff's and Class members' photographs in low-resolution or time-limited formats to a potential customer. Ancestry promises the potential customer that purchasing a paid subscription to Ancestry.com will reveal the full versions of Plaintiff's and Class member's photographs and personal information. Ancestry promises that a paid subscription will also deliver many additional services, including the ability to search for and view billions of additional records about millions of other individuals. Searchable records included with an Ancestry.com subscription include yearbook photos, marriage records, baptism records, death certificates, divorce records, photographs of grave sites, and others.

6. In the first of its advertising techniques, Ancestry provides a publicly accessible landing page on which a visitor may search by name and location for any person. In response to searches for the Plaintiff's and Class members' names, Ancestry delivers a list of yearbook photographs in its possession showing the Plaintiff's and Class members' names and faces. Plaintiff's and Class members' photographs are accompanied by promotional text urging the visitor to "Sign Up Now" for an Ancestry.com subscription. The promotional text promises that "There's more to see" about the Plaintiff and Class members if the visitor buys a subscription, including higher-resolution photographs and additional personal information about Plaintiff and Class members, such as city of residence, estimated age, and high school graduation year.

7. In the second advertising technique, Ancestry sends promotional emails and on-site messages to users who have provided their email addresses to Ancestry but have not yet purchased a paid subscription plan. These emails and messages use the Class members' names

and personalities. For example, Ancestry sends promotional emails to non-paying users with the subject line "What should you explore next for [Class member]?" A link in the body of the email encourages the user to click on the Class member's name to view records about her. Users who click the link and attempt to view records about the Class member receive in response a webpage asking the user to subscribe to Ancestry.com.

8.     In the third advertising technique, Ancestry offers a two-week "free trial" membership during which users may access and use the full range of services associated with an Ancestry website subscription. "Free trial" users may search for, view, print, and share the Plaintiff's and Class members' photographs as minors and personal information including cities of residence, estimated birth years, and graduation dates. Ancestry's sole purpose for using the Plaintiff's and Class members' photographs and personal information as part of its "free trial" membership is to solicit the purchase of paid memberships.

9.     By using Plaintiff's and Class members' photographs as minor children in its advertising, Ancestry misleads the consuming public into believing Plaintiff and Class members are Ancestry.com users, willingly uploaded their personal information to Ancestry.com, and endorse Ancestry's subscription product. In fact, Plaintiff and the Class have no relationship with Ancestry, had no knowledge their names and photographs were being used, and do not approve of Ancestry's use of their names and likenesses to advertise Ancestry.com subscriptions. Ancestry's website and advertising communications fail to disclose that Plaintiff and the Class are unaffiliated with Ancestry.

10.    Ancestry does not present the Plaintiff's and Class members' photographs as "samples" advertising the purchase of the photographs themselves. Ancestry uses Plaintiff's and Class members' names and photographs to advertise subscriptions to Ancestry.com. An Ancestry.com subscription includes far more than access to the Plaintiff's photographs. At costs ranging between $24.99 and $49.99 per month, a subscription to Ancestry.com entails a wide range of services, including the ability to: "Grow a family tree with exclusive search tools"; "Connect with fellow members"; "Access 15+ billion records" from the U.S.; "Expand your

search with 3+ billion worldwide records"; "Find stores among 142+ million pages in the Newspapers.com Basic subscription"; "Explore 537+ million original military records on Fold3.com"; and "Enjoy premium support with a dedicated 1-800 number."[1]

11.    Ancestry is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. Ancestry does not host user-generated content on any part of the website relevant to this lawsuit. Ancestry is the sole curator, designer, and creator of the content described in this Complaint.

12.    Plaintiff does not know how Ancestry obtained his photographs as a minor child. Ancestry's website states that the photographs were originally printed in school yearbooks but does not disclose how Ancestry obtained copies of Plaintiff's and Class members' school yearbooks.

13.    On information and belief, Ancestry obtained at least some of the yearbook photographs in its database by paying a licensing fee to PeopleConnect, Inc. On information and belief, Ancestry obtained at least some of the yearbook photographs in its database by copying Indiana yearbooks from publicly available sources such as public libraries in Indiana.

14.    Ancestry appropriated Plaintiff's and Class members' photographs without permission from the Plaintiff and the Class, the photographers who took the pictures, the authors who created the school yearbooks, or the publishers of the school yearbooks. Ancestry does not hold copyright in Plaintiff's or Class members' yearbooks, nor does it have permission from the copyright holder to republish or distribute Plaintiff's or Class members' yearbooks.

15.    Plaintiff and the Class arguably consented as minor children to have their photographs taken for school yearbooks intended solely for print distribution amongst a narrow circle of friends, family, and schoolmates. Plaintiff's yearbooks were originally produced decades ago when the Internet was in its infancy. Plaintiff and the Class did not consent to the

---

[1] https://www.ancestry.com/cs/offers/compare

commercial use of their photographs to promote a website, nor to the worldwide distribution of their photographs on the Internet.

16.     Ancestry fails to provide any mechanism by which Plaintiff or the Class may request that their photographs and personal information be removed from Ancestry's website. Nor does Ancestry allow Plaintiff or the Class to opt out of the use of their photographs as minors in advertisements for subscriptions to Ancestry.com.

17.     Indiana law recognizes the intellectual property and privacy rights of individuals in controlling the use of their names, photographs, likenesses, and personalities for commercial purposes.

18.     By using Plaintiff's and Class member's names, likenesses, photographs, and personalities in advertisements for website subscriptions without consent, Ancestry violated their intellectual property and privacy rights. Plaintiff and Class members have the right not to have their names, likenesses, photographs, and personalities exploited to promote a website with which they have no relationship and which they have no interest in promoting. Plaintiff and Class members have an economic interest in their names, likenesses, photographs, and personalities, which Ancestry has stolen, and a privacy interest in their names, likenesses, photographs, and personalities, which Ancestry has violated. Ancestry has been unjustly enriched through its actions. Plaintiff and Class members have the right to recover the money Ancestry earned exploiting their names, likenesses, photographs, and personalities.

19.     By these actions, Ancestry has violated Indiana's Right of Publicity statute, codified in Ind. Rev. Code § 32-36-1, and Indiana common law prohibiting misappropriation of a name or likeness. Plaintiff and Class members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through Ancestry's unlawful profiting from its exploitation of their names, personalities, and personal information; and through harm to peace of mind. Plaintiff and Class members are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personalities, restitution of the value of their names and

personalities, an injunction prohibiting Ancestry's unlawful conduct, an award of attorneys' fees, expenses, and costs, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, none of the Defendants are incorporated in Indiana or have their principal place of business in Indiana. The proposed class is composed primarily of Indiana residents. (B) The proposed class consists of at least 100 members. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Ind. Rev. Code § 32-36-1-10 provides for damages equal to the "greater" of "actual damages, including profits derived from the unauthorized use," and statutory damages in the amount of "one thousand dollars" per violation. Because Ancestry advertises using millions of records from Indiana yearbooks, the amount in controversy is well over the jurisdictional amount.

21.     This Court has specific personal jurisdiction over Ancestry because a significant portion of the events giving rise to this lawsuit occurred in this state, including: Ancestry's copying of Plaintiff's and Class member's personal information from yearbooks or other sources located in Indiana; Ancestry's display of Plaintiff's and Class member's names and photographs in advertisements expressly directed at Indiana residents, including Plaintiff's and Class members' families; Ancestry's failure to obtain required consent from Class members in Indiana; and Ancestry's violation of the intellectual property rights of Plaintiff and Class members who reside in Indiana.

22.     This Court has specific personal jurisdiction over Ancestry because, under Indiana's right of publicity statute, a defendant who engages in conduct prohibited by the statute "submits to the jurisdiction of Indiana courts." Ind. Rev. Code § 32-36-1-9.

23.     Plaintiff Fry resides in this state and District. Ancestry violated Mr. Fry's

intellectual property and privacy rights and misappropriated his name, personal information, and likeness, the locus of which is in this state and District. Ancestry failed to obtain the required consent in this state and District. Ancestry displayed advertisements using Plaintiff's and Class members names, personal information, and personalities in this state and District.

24. Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district. Named Plaintiff Jason Fry resides in this district.

**PARTIES**

**Defendants**

25. Defendant ANCESTRY.COM OPERATIONS INC. is a Delaware corporation with its headquarters in Lehi, Utah. It conducts business under the brand names "Ancestry.com," "Ancestry," and other brand names associated with the various website and services it owns and operates. ANCESTRY.COM INC. is a Delaware corporation with its headquarters in Lehi, Utah. Defendant ANCESTRY.COM LLC is a Delaware limited liability company with its headquarters in Lehi, Utah.

26. The Defendants own and operate the website www.ancestry.com. Plaintiff refers to the Defendants collectively as "Ancestry." Ancestry advertises and provides its subscription services to consumers throughout this District, Indiana, and the United States.

**Plaintiff**

27. Plaintiff Jason Fry is a resident of Wabash County, Indiana.

28. Mr. Fry has never visited, used, or subscribed to the website Ancestry.com.

29. Mr. Fry attended Marion High School in Marion, Indiana, from which he graduated in 1999.

**FACTUAL ALLEGATIONS**

30. Plaintiff Jason Fry is a private individual who has no relationship with Ancestry. He has never visited, used, or subscribed to Ancestry.com.

31.     Mr. Fry did not give consent to Ancestry to use his name, photograph, likeness, or personality in any way. Had Ancestry requested his consent, Mr. Fry would not have provided it.

32.     Mr. Fry highly values his personal privacy, and his ability to control and prevent the commercial use and distribution of his personal information, likeness, and personality without his consent.

33.     Ancestry uses at least two photographs depicting Mr. Fry as a minor to advertise subscriptions to Ancestry.com.

34.     Ancestry uses Mr. Fry's photograph in at least three types of advertisements. <u>First</u>, Ancestry provides a publicly accessible landing page on which members of the public may and have searched for Mr. Fry by name, location, and/or birth year, as shown below:



35.     Visitors who searched for Mr. Fry received in response four records derived from Mr. Fry's high school yearbooks. The four records include photographs depicting Mr. Fry as a minor. Ancestry displays a low-resolution version of each photograph for free, accompanied by promotional text promising that "There's more to see" about Mr. Fry if the user clicks "Sign Up Now." Ancestry promises it has additional information about his grade completed and school location, among other things. For privacy, Plaintiff's counsel redacted the faces of Mr. Fry and his classmates:



36.     The promotional message encouraging viewers to "Sign Up Now" is isolated below. For privacy, Plaintiff's counsel have redacted the faces of Mr. Fry and his classmates:



37.     Users who clicked "Sign Up Now," or who clicked on the "View Image" link adjacent to any of Mr. Fry's records (*see* ¶ 34), were shown a payment page soliciting the purchase of a membership plan for $24.99 per month. The page does not say that users are paying to access Mr. Fry's photograph or personal information. The page says that users are paying to receive a broad range of services, including access to "The world's most comprehensive record collection" and the ability to create and grow a "family tree".



38.  <u>Second</u>, Ancestry sends promotional emails incorporating Class members' names and personalities to potential subscribers. On information and belief, Ancestry has sent such promotional emails incorporating Mr. Fry's name. Examples of such promotional emails, with names redacted for privacy, are shown below:



39.     Ancestry sends these and similar emails bearing Mr. Fry's and Class members' names and likeness to users who have not yet purchased a paid subscription plan, and who Ancestry believes may be related to Mr. Fry or the Class member. Users who click on the name shown in the email and attempt to review records about Mr. Fry or the Class member receive a web page soliciting a subscription to Ancestry.com at prices ranging from $24.99 to $49.99 per month:



40.     <u>Third</u>, Ancestry allows users who have not yet signed up for a paying subscription to search for and view Mr. Fry's photographs and personal information as part of a two-week "free trial" membership. The search results shown in response to a search for Mr. Fry's name by "free trial" user are shown below. Clicking the "View Record" link adjacent to any of Mr. Fry's results yields a record displaying Mr. Fry's photograph and personal information. Two of these records are also shown below. For privacy, Plaintiff's counsel redacted Mr. Fry's face.







41. Ancestry's sole purpose in using Mr. Fry's photograph, name, and personal information as part of its "free trial" membership is to solicit the purchase of paid memberships from its "free trial" members.

42. Mr. Fry does not know how Ancestry obtained his photographs as a minor child. The photographs appear to have been taken from the yearbooks Mr. Fry's high school produced for students and family between 1998 and 1999.

43. Ancestry appropriated Mr. Fry's photographs without permission from Mr. Fry, the photographer who took his pictures, the authors who created his high school yearbooks, or the publishers of his high school yearbooks. Ancestry does not hold copyright in yearbooks from Mr. Fry's high school, nor does it have permission from the copyright holder to republish or distribute the yearbooks or the photographs contained therein.

44. Mr. Fry has intellectual property and privacy interests in his photograph, name, likeness, and personality recognized by Indiana statutory and common law. He has the right to exclude anyone from making commercial use of his personality without his permission.

45. Ancestry has injured Mr. Fry by taking his intellectual property without compensation; by invading his privacy rights protected by Indiana statutory and common law; and by unlawfully profiting from its exploitation of his persona.

46. Ancestry's illegal actions caused Mr. Fry mental injury and disturbed his peace of mind. Mr. Fry is deeply uncomfortable that Ancestry is profiting from its use of his name, photographs, and personality in advertisements for a website he does not use, endorse, or approve of. Mr. Fry believes his personality is rightly his to control. Ancestry's illegal use has left him worried and uncertain about his inability to control how his name and personality is used. Mr. Fry feels that Ancestry's use of his name and personality is an alarming invasion of his privacy.

## CLASS ALLEGATIONS

47. Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(43). Plaintiff seeks to represent the following class:

All Indiana residents who are not Ancestry.com subscribers and whose names and yearbook photographs Ancestry uses to promote website subscriptions.

48. Excluded from the proposed Class are Plaintiff's counsel; Ancestry, its officers and directors, counsel, successors, and assigns; any entity in which Ancestry has a controlling interest; and the judge to whom this case is assigned and the Judge's immediate family.

49. The members of the proposed class are so numerous that joinder of individual claims is impractical. Ancestry represents that its database of yearbook photographs includes 730 million records. Of those, about 33 million records correspond to schools in Indiana.

50. There are significant questions of fact and law common to the members of the class. These issues include:

    a. Whether Ancestry's misappropriation of names, photographs, and personal information, and use of that information in the advertising techniques described in this Complaint, constitute the use of individuals' personalities for commercial purposes without previous written consent within the meaning of Ind. Code § 32-36-1-8;

    b. Whether Ancestry solicited and obtained written consent from Class members in Indiana prior to the use of their names, photographs, images, likenesses, distinctive appearances, and personalities to promote Ancestry's products, as required by Ind. Code § 32-36-1-8;

    c. Whether Ancestry is a news reporting or entertainment medium, *see* Ind. Code § 32-36-1-4;

    d. Whether Ancestry's commercial use of the names, photographs, images, likenesses, and personalities of Plaintiff and the Class was knowing, willful, or intentional such that Plaintiff and the Class are entitled to treble and punitive damages under Ind. Code § 32-36-1-10;

    e. Whether Ancestry's conduct as described in this Complaint violates Indiana common law prohibiting misappropriation of a name or likeness;

f.   Whether Plaintiff and the Class are entitled to injunctive, declaratory, monetary, and other relief requested in this Complaint.

51.   Plaintiff's claims are typical of those of the proposed class. Plaintiff and all members of the proposed Class have been harmed by Ancestry's misappropriation and misuse of their names, photographs, images, likenesses, identities, and personalities in advertisements promoting Ancestry.com. Ancestry presents its advertisements in the same way for each Class member.

52.   The proposed Class representatives will fairly and adequately represent the proposed Class. The Class representative's claims are co-extensive with those of the rest of the Class, and they are represented by qualified counsel experienced in class action litigation of this nature.

53.   A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Class is impracticable. Many members of the Class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Ancestry's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

54.   The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Ancestry has acted on grounds generally applicable to the proposed class, such that final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

55.   The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class members predominate over questions affecting individual

members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

**FIRST CAUSE OF ACTION**
**Indiana Right of Publicity Statute, Ind. Rev. Code § 32-36-1**

56.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57.     Indiana's right of publicity statute prohibits the use of any "aspect of a personality's right of publicity for a commercial purpose . . . without having obtained previous written consent." Ind. Code. § 32-36-1-8.

58.     By engaging in the forgoing acts and omissions, Ancestry used aspects of Plaintiff's and Class members' personalities, including their names, photographs, images, likenesses, and distinctive appearances, for commercial purposes without consent. These aspects of Plaintiff's and Class members' personalities have commercial value.

59.     Each use of a Class members' photograph and personality is a separate and distinct violation of Ind. Code. § 32-36-1-8.

60.     The following facts and events occurred within Indiana: Ancestry's misappropriation of Plaintiff's and Class members' photographs from Indiana school yearbooks; Ancestry's failure to obtain the required consent from Plaintiff and Class members in Indiana; Ancestry's display of Plaintiff's and Class members' photographs in advertisements displayed on Ancestry's website to users in Indiana; and the injury to Plaintiff's and Class members' intellectual property and privacy rights, which are harms felt in Indiana. *See* Ind. Code § 32-36-1-1(a).

61.     Ind. Code § 32-36-1-10 provides that a person who violates the statute is liable for (1) statutory damages in the amount of $1,000; (b) "actual damages, including profits derived from unauthorized use," if this amount is greater than $1,000; and (c) "[t]reble or punitive damages, as the injured party may elect, if the violation . . . is knowing, willful, or intentional."

62.     As a result of Ancestry's violation of Ind. Code. § 32-36-1-8, Plaintiff and the

Class have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiff and Class members have been denied the economic value of their personalities, which Ancestry misappropriated without compensation to Plaintiff and the Class. Plaintiff and the Class members were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff and the Class members suffered emotional disturbance from the misappropriation and misuse of their personalities.

63.     On behalf of the Class, Plaintiff seeks statutory damages; actual damages, including Ancestry's profits from its misuse; compensatory damages for royalties Ancestry failed to pay; restitution, punitive and exemplary damages; the award of attorneys' fees and costs; an injunction prohibiting Ancestry's unauthorized use; and declaratory relief.

## SECOND CAUSE OF ACTION
### Indiana Tort of Appropriation of a Name or Likeness

64.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Indiana common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the appropriation of a likeness by a defendant for the defendant's "own use or benefit." *See, e.g., Felsher v. University of Evansville*, 755 N.E.2d 589 (Ind. 2001).

66.     By engaging in the forgoing acts and omissions, Ancestry appropriated Plaintiff and Class members' names and likenesses for its own commercial benefit.

67.     As provided for under Indiana common law, on behalf of the Class, Plaintiff seeks monetary recovery in the amount of the commercial benefit Ancestry derived from its misuse of their likeness, as well as the entry of an injunction prohibiting Ancestry's tortious acts.

## PRAYER FOR RELIEF

68.     WHEREFORE Plaintiff, on behalf of himself and all others similarly situation, hereby demands judgment against Defendant Ancestry as follows:

(a) For an order certifying the proposed Class and appointing Plaintiff and his counsel

to represent the Class;

(b) For a declaration that Ancestry's acts and omissions constitute a willful misappropriation of names, likeness, photographs, images, and other personal information, and infringe on protected privacy rights, in violation of Indiana law;

(c) For nominal damages awarded in recognition of Ancestry's violation of the statutorily protected property and privacy rights of Plaintiff and the Class;

(d) For preliminary and permanent injunctive relief enjoining and preventing Ancestry from continuing to operate its Ancestry.com website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(e) For an order enjoining Ancestry from continuing the unlawful and unfair conduct described in this Complaint;

(f) For restitution for Plaintiff and Class members of the value that Ancestry derived from misappropriating and using their personalities;

(g) For an award of damages, including without limitation damages for actual harm, profits earned by Ancestry from the sale of subscriptions to Ancestry.com, and statutory damages;

(h) For an award of reasonable attorneys' fees, costs, and expenses incurred by Plaintiff and the Class; and

(i) For an award of other relief in law and equity to which Plaintiff and Class members may be entitled.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated: February 22, 2022                    By: */s/ Thomas S. Reynolds, II*
                                                       Thomas S. Reynolds, II
                                                       Michael C. Lueder (to be admitted *Pro Hac*)
                                                       Hansen Reynolds LLC

301 N. Broadway, Suite 400
Milwaukee, WI 53202
Telephone: 414-273-8470
Facsimile: 414-273-8476
treynolds@hansenreynolds.com
mlueder@hansenreynolds.com

Benjamin R. Osborn (to be admitted *Pro Hac*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

Samuel J. Strauss (to be admitted *Pro Hac*)
Email: sam@turkestrauss.com
Raina Borelli (to be admitted *Pro Hac*)
Email: raina@turkestrauss.com
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

Michael F. Ram (to be admitted *Pro Hac*)
mram@forthepeople.com
Marie N. Appel (to be admitted *Pro Hac*)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

*Attorneys for Plaintiff*
*and the Proposed Class*