# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

JASON FRY, on behalf of himself and all others similarly situated,

    Plaintiff,

    v.

ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Hon. Jon E. DeGuilio

Case No.: 3:22-cv-00140

# DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULE 12 AND INDIANA'S ANTI-SLAPP STATUTE

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

BACKGROUND ...................................................................................................................2

LEGAL STANDARDS .........................................................................................................3

ARGUMENT.........................................................................................................................4

I.      THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY ....................4

II.     PLAINTIFF CANNOT ALLEGE A CONCRETE INJURY .............................................7

III.    PLAINTIFF FAILS TO STATE AN INDIANA RIGHT OF PUBLICITY CLAIM........12

        A.      Plaintiff Fails To Plead Any Act That Occurred Within Indiana ..........................12

        B.      Plaintiff Fails To Plead Use Of A "Personality" ...................................................14

IV.     PLAINTIFF FAILS TO PLEAD A COMMON LAW MISAPPROPRIATION
        CLAIM.........................................................................................................................15

V.      PLAINTIFFS' CLAIMS FAIL BECAUSE THE ALLEGED USE IS EXCEPTED
        UNDER THE LAW.......................................................................................................16

VI.     PLAINTIFF'S CLAIMS ARE FORECLOSED BY SECTION 230 OF THE
        COMMUNICATIONS DECENCY ACT.......................................................................19

VII.    THE COPYRIGHT ACT PREEMPTS PLAINTIFF'S CLAIMS ...................................21

VIII.   THE ANTI-SLAPP STATUTE PROTECTS ANCESTRY FROM LIABILITY.............24

CONCLUSION.....................................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### Cases

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ............................................................ 4, 6

*Alvarez v. Atl. Richfield Co.*,
2021 WL 3161461 (N.D. Ind. July 26, 2021) ........................................ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 4

*Balsley v. LFP, Inc.*,
2010 WL 11561844 (N.D. Ohio Jan. 26, 2010) ..................................... 15

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
805 F.2d 663 (7th Cir. 1986) ................................................. 20, 21, 22

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ........................................................................ 23

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ........................................................... 19

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) .......................................................... 6, 7

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ............................................................. 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................ 13

*Bennett v. Google, LLC*,
882 F.3d 1163 (D.C. Cir. 2018) ......................................................... 19

*Bonilla v. Ancestry.com Operations Inc.*,
No. 20-C-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021) ............... 7, 11, 19, 22

*Boshears v. PeopleConnect, Inc.*,
2022 WL 888300 (W.D. Wash. Mar. 25, 2022) ......................... 12, 13, 14

*Brode v. Tax Mgmt., Inc.*,
1990 WL 25691 (N.D. Ill. Feb. 1, 1990) ............................................ 21

*Callahan v. Ancestry.com Inc.*,
2021 WL 2433893 (N.D. Cal. June 15, 2021) ....................... 2, 10, 12, 18, 19

*Callahan v. Ancestry.com Inc.*,
2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ........................... 8, 9, 18, 19, 22

*CanaRx Servs., Inc. v. LIN Television Corp.*,
2008 WL 2266348 (S.D. Ind. May 29, 2008) ....................................... 23

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ................................................................ 17, 19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .................................................................................. 4

*Daly v. Nexstar Broad., Inc.*,
542 F. Supp. 3d 859 (S.D. Ind. 2021) ........................................... 4, 23, 24

*Daniels v. FanDuel Inc.*,
2017 WL 4340329 (S.D. Ind. Sept. 29, 2017),
*aff'd*, 909 F.3d 876 (7th Cir. 2018) ......................................................... 16

*Daniels v. FanDuel Inc.* (*Daniels II*),
109 N.E.3d 390 (Ind. 2018) ..................................................... 15, 16, 17, 24

*Dart v. Craigslist, Inc.*,
665 F. Supp. 2d 961 (N.D. Ill. 2009) ...................................................... 17

*Del Vecchio v. Amazon.com, Inc.*,
2012 WL 1997697 (W.D. Wash. June 1, 2012) ....................................... 9

*Denberg v. U.S. R.R. Ret. Bd.*,
696 F. 2d 1193 (7th Cir. 1983) ................................................................ 5

*Dent v. Renaissance Mktg. Corp.*,
2015 WL 3484464 (N.D. Ill. June 1, 2015) ............................................ 20

*Dillinger, LLC v. Elec. Arts Inc.*,
795 F. Supp. 2d 829 (S.D. Ind. 2011) .................................................... 17

*Dobrowolski v. Intelius, Inc.*,
2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) .......................................... 11

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................. 20

*Fleek v. Whitepages, Inc.*,
2020 WL 4339436 (S.D. Ind. July 28, 2020) ........................................... 6

*Fus v. CafePress, Inc.*,
2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) ........................................... 8

*Glovaroma, Inc. v. Maljack Prods., Inc.*,
1998 WL 102742 (N.D. Ill. Feb. 26, 1998) ............................................ 21

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................. 18

*Greene v. Mizuho Bank, Ltd.*,
169 F. Supp. 3d 855 (N.D. Ill. 2016) ....................................................... 5

*Groshek v. Time Warner Cable, Inc.*,
865 F.3d 884 (7th Cir. 2017) ................................................................. 10

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ................................................................... 9

*Husted v. A. Philip Randolph Inst.*,
138 S. Ct. 1833 (2018) ...................................................................... 14, 15

*Hyatt Int'l Corp. v. Coco*,
302 F.3d 707 (7th Cir. 2002) ...................................................................... 3

*Jones* v. *Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) .................................................................. 19

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ................................................................ 19

*Low v. Linkedin Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...................................... 11

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) ........................................................... 21, 22

*Marzullo v. Nlmk Ind.*,
2021 WL 1089796 (N.D. Ind. Mar. 22, 2021) ...................................... 11

*McGoveran v. Amazon Web Servs., Inc.*,
2021 WL 4502089 (D. Del. Sept. 30, 2021) ....................................... 6, 13

*Mirfasihi v. Fleet Mortg. Corp.*,
2007 WL 2066503 (N.D. Ill. July 17, 2007),
*aff'd*, 551 F.3d 682 (7th Cir. 2008) ......................................................... 8

*Near E. Side Cmty. Org. v. Hair*,
555 N.E.2d at 1324 (Ind.Ct. App. 1990) ............................................... 15

*O'Kroley v. Fastcase, Inc.*,
831 F.3d 352 (6th Cir. 2016) .................................................................. 20

*Pack v. Truth Publ'g Co.*,
122 N.E.3d 958 (Ind. Ct. App. 2019) .................................................... 23

*Patterson v. Chiappa Firearms, USA, Ltd.*,
2021 WL 4287431 (S.D. Ind. Sept. 21, 2021) ...................................... 3, 4

*Perfect 10, Inc. v. CCBill, LLC*,
340 F. Supp. 2d 1077 (C.D. Cal. 2004) ................................................. 19

*Raines v. Byrd*,
521 U.S. 811 (1997) .................................................................................. 4

*Sessa v. Ancestry.com Operations Inc.*,
2021 WL 4245359 (D. Nev. Sept. 16, 2021) ......................... 7, 11, 19, 22

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) .................................................................. 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......................................................................... 4, 7, 9

*Spy Optic, Inc. v. AreaTrend*,
2021 WL 225628 (9th Cir. Jan. 22, 2021) ............................................... 6

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ......................................................... 5

*Telemedicine v. WoundRight Techs., LLC*,
   27 F. Supp. 3d 883 (N.D. Ill. 2014) ............................................... 7

*Time, Inc. v. Sand Creek Partners, L.P.*,
   825 F. Supp. 210 (S.D. Ind. 1993) ................................................ 15

*Toney v. L'Oreal USA, Inc.*,
   406 F.3d 905 (7th Cir. 2005) ................................................... 20, 22

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ........................................................... 7, 10

*United States ex rel. Berge v. Bd. of Trustees*,
   104 F.3d 1453 (4th Cir. 1997) ...................................................... 22

*Villa v. Brady Pub.*,
   2002 WL 1400345 (N.D. Ill. June 27, 2002) ................................. 20

*Vinci v. Am. Can Co.*,
   69 Ohio App. 3d 727 (Ohio Ct. App. 1990) .................................. 15

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..................................................................... 6

## Statutory Authorities

17 U.S.C. § 101 ......................................................................... 17, 21, 22

17 U.S.C. § 102 ................................................................................ 22

17 U.S.C. § 103 ................................................................................ 22

17 U.S.C. § 301 .................................................................................. 2

47 U.S.C. § 230 ..................................................................... 17, 18, 20

Ind. Code § 32-36-1-1 ................................................................ *passim*

Ind. Code § 32-36-1-6 ......................................................... 10, 11, 14

Ind. Code § 32-36-1-8 ................................................................ *passim*

Ind. Code § 34-7-7-2 .................................................................... 4, 23

## Rules and Regulations

Fed. R. Evid. 201 .............................................................................. 8

Ind. Trial Rule 4.4(A) ....................................................................... 4

## Treatises

Restatement (Second) of Torts § 652C (1977) ........................... *passim*

**<u>Additional Authorities</u>**

Library of Congress, https://www.loc.gov/resource/mss85590.041/?sp=1&r=-0.649,0.265,2.298,0.978,0  (last accessed May 10, 2022)........................................................ 16

Marion High School: Yearbooks, *available at*
https://marion.touchpros.com/flipbookyear.aspx?tabid=2232 (online, digital copies of high school yearbooks from 1942-2019) (last visited May 10, 2022)........................................ 8

Merriam-Webster Dictionary, *Yearbook*
https://www.merriamwebster.com/dictionary/*Yearbook* (last visited May 10, 2022)............. 16

## INTRODUCTION

Ancestry operates the world's largest subscription collection of genealogy databases, encompassing more than 27 billion historical records. Much of this data is available for free; even more can be accessed by members. Subscribers can review, for example, US census records, historical military documents, and historical immigration records ranging from passenger lists for most American ports to border-crossing files. Ancestry also makes available millions of digitized family and local history books, newspapers dating to the 18th century, and school yearbooks.

The access to yearbooks prompted this suit, one of a series of similar class actions filed by the same plaintiff's counsel. Plaintiff objects that excerpts from his high school yearbooks—which have been publicly available for over twenty years—are searchable and then viewable on Ancestry.com. Based on Ancestry's provision of access to these already-public records, plaintiff asserts broad class claims against Ancestry under Indiana's right of publicity laws. Plaintiff's claims are intuitively ill-founded—like all individuals pictured in yearbooks, plaintiff consented years ago to public distribution of these photos without restriction.

At the threshold, plaintiff fails to establish specific personal jurisdiction over Ancestry. Although the records may be searchable and accessible from Indiana (as they are from everywhere else in the world with internet access), that fact is not enough to hale Ancestry into court in Indiana. Nor can plaintiff offer any other basis for jurisdiction, because the facts giving rise to plaintiff's claims did not result from any contact Ancestry had with Indiana.

This case should also be dismissed for lack of Article III jurisdiction. As the Northern District of California determined in dismissing a nearly-identical putative class action, "Ancestry's use of the public profiles to solicit paying subscribers…—standing alone—does not establish injury, even though Ancestry profits from the use. There needs to be more than the

statutory injury." *Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at *3 (N.D. Cal. June 15, 2021). Here, as in *Callahan*, plaintiff cannot plausibly allege any actual injury resulted from Ancestry's provision of access to his already-public, decades-old yearbook records.

Substantively, multiple other bases also foreclose plaintiff's claims at the pleading stage:

***Plaintiff Cannot State A Claim.*** Plaintiff's statutory claim fails because he has not, and cannot, allege any violation occurred ***within Indiana*** or that his name or likeness had any pre-existing commercial value, both required elements of his claim. In addition, Ancestry's alleged use of plaintiff's yearbook record falls within exceptions under both the statute and common law intended to balance a claimed "right of publicity" against the public's interest in the dissemination of truthful, informative publications.

***Section 230 Immunity.*** The Communications Decency Act ("CDA") provides immunity from claims arising from publication of third-party-created content. As the *Callahan* court reasoned, Ancestry "obviously did not create the yearbooks" and instead "engaged in a 'publisher's traditional editorial functions'" in making the yearbooks available. 2021 WL 2433893, at *5. Ancestry is thus immune to plaintiff's claims. *Id.*

***Copyright Preemption.*** The Copyright Act preempts state law claims that allege no more than the reproduction, distribution, or display of copyrightable works. *See* 17 U.S.C. § 301(a). Here, plaintiff alleges no other use of his name or image apart from his mere appearance among copyrightable yearbook records. His claims are thus preempted.

For these reasons and others set forth below, plaintiff's claims should be dismissed.

## BACKGROUND

Ancestry is a genealogy company that provides access to a variety of historical and cultural records, including: obituaries, family trees, marriage records, death records, military

records, census records, local history books, and school yearbooks. *See* Ancestry.com. Of the billions of records available on Ancestry.com, many have never been accessed by actual users, but rather exist "unseen" in virtual storage. Ancestry uses yearbooks in a simple, non-controversial way: it aggregates and makes searchable already-public yearbook information created by third parties. *See* ECF No. 1 ("Compl.") at ¶ 6. Thus, if an Ancestry user searches "Eve Smith, Carmel, Indiana," Ancestry may indicate it has a yearbook image for a person with that name who went to school in that location. Subscribers can take the further step of actually viewing the image to determine if it is the Eve Smith of interest. *See id.* at ¶ 35.

Here, plaintiff's claims are premised on Ancestry's inclusion of his 1998 and 1999 Indiana high school yearbook records in Ancestry's Yearbook Database. *See id.* Plaintiff does not contend his picture or information were actually ever viewed by any Ancestry member. Nor does he articulate or attempt to quantify any monetary injury from Ancestry's storage of this image and information.

Based on Ancestry's inclusion of these decades-old yearbook records in its database, plaintiff asserts, on behalf of a putative class of Indiana residents, claims under Indiana's Right of Publicity Statute, Ind. Code § 32-36-1-8 and Indiana common law for misappropriation of name or likeness. Compl. at ¶¶ 56-67.

## LEGAL STANDARDS

**Personal Jurisdiction.** Courts sitting in diversity may exercise personal jurisdiction over nonresident defendants only when the forum state has jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). "Because Indiana extends personal jurisdiction to any basis 'consistent with the Federal Due Process Clause,' the sole issue is 'whether the exercise of jurisdiction comports with the limits imposed by federal due process.'" *Patterson v. Chiappa*

*Firearms, USA, Ltd.*, 2021 WL 4287431, at *1 (S.D. Ind. Sept. 21, 2021); Ind. Trial Rule 4.4(A).

**Article III Standing.** To establish subject matter jurisdiction, plaintiff must allege an "injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).

**Failure to State a Claim.** A complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Facts "merely consistent with" liability do not state a claim. *Id.*

**Indiana's anti-SLAPP Statute.** Indiana's anti-SLAPP statute was enacted "to reduce the number of lawsuits brought to chill the valid exercise of the right of free speech." *See Daly v. Nexstar Broad., Inc.*, 542 F. Supp. 3d 859, 867 (S.D. Ind. 2021); Ind. Code § 34-7-7-2. Accordingly, the law provides "a defense to a civil claim where the complained of act is made in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue and was taken in good faith and with a reasonable basis in law and fact." *Daly*, 542 F.3d at 867 (cleaned up).

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY

Due process permits the exercise of specific jurisdiction only where "the defendant's *suit-related* conduct [] create[s] a substantial connection with the forum State."[1] *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). Where, as

---

[1] Plaintiff does not allege Ancestry is subject to general jurisdiction. Nor could he—the Ancestry entities are not incorporated in or headquartered in Indiana and lack "continuous and systematic [contacts] as to render [them] essentially at home" there. *See Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quotations and citation omitted).

here, the plaintiff's claims sound in tort, "the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702-03 (7th Cir. 2010). The plaintiff must demonstrate the case arises from (1) intentional conduct "expressly aimed at the forum state," and (2) that the defendant had "knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703. Plaintiff cannot satisfy these requirements here.

*First*, plaintiff cannot point to any suit-related conduct "expressly aimed at the forum state." *Id.* Plaintiff alleges Ancestry copied his yearbook from "sources located in Indiana." Compl. at ¶ 21.[2] However, this is incorrect—Ancestry did not obtain plaintiff's yearbook from Indiana, nor did any contacts between Ancestry and Indiana lead to Ancestry's acquiring or uploading plaintiff's yearbook record on its website. Ex. A, Declaration of Todd Godfrey ("Godfrey Decl.") at ¶¶ 5-6.[3] Plaintiff also alleges Ancestry "expressly directed" his yearbook information to "Indiana residents." Compl. at ¶ 21. Again, however, this assertion is unsupportable. Plaintiff's yearbook record was *never* targeted to users located in Indiana and was instead simply made available in the yearbook database to *any* user who might have searched for it. Ex. A, Godfrey Decl. at ¶ 7.

Aside from these demonstrably incorrect assertions, plaintiff alleges only that Ancestry hosted a universally-accessible website and that he purportedly suffered harm in Indiana because

---

[2]     Only the claims of the *plaintiff*, not putative class members, can give rise to jurisdiction. *Denberg v. U.S. R.R. Ret. Bd.*, 696 F. 2d 1193, 1197 (7th Cir. 1983) (when "a district court [does not have] jurisdiction over the claim of the class representative … it [has] no jurisdiction over the class action either even if the claims of some of the members of the class were within its jurisdiction."); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) ("Specific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members").

[3]     Despite alleging his yearbook was copied in Indiana, plaintiff elsewhere concedes he "does not know how Ancestry obtained his photographs." Compl. at ¶ 12.

he happens to reside there. *See* Compl. at ¶ 21. But it is well established that operation of a generally-available website is insufficient for jurisdiction. *See be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution"); *see also Spy Optic, Inc. v. AreaTrend*, 2021 WL 225628, at *3 (9th Cir. Jan. 22, 2021) ("Operating a universally accessible website alone cannot satisfy the express aiming prong.").[4] And it is similarly settled that a plaintiff's claim that he suffered injury in the forum does not suffice. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Advanced Tactical*, 751 F.3d at 802 ("after *Walden* there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum").[5]

---

[4] That some yearbooks stored on Ancestry's website correspond to Indiana schools is likewise insufficient for jurisdiction. Plaintiff alleges Ancestry hosts "730 million [yearbook] records," of which only "33 million . . . correspond to schools in Indiana," a mere 4.52%. *See* Compl. at ¶ 49. This incidental connection with Indiana as a result of the universal reach of Ancestry's website and the national focus of its yearbook database is insufficient to show Ancestry aimed its actions at Indiana. *See, e.g.*, *Fleek v. Whitepages, Inc.*, 2020 WL 4339436, at *2 (S.D. Ind. July 28, 2020) (no purposeful availment where "Whitepages's products and services in Indiana make up less than two percent of its typical monthly billing").

[5] Plaintiff also asserts that, under "Indiana's right of publicity statute, a defendant who engages in conduct prohibited by the statute 'submits to the jurisdiction of Indiana courts.'" Compl. at ¶ 22. But a statute cannot confer jurisdiction that exceeds the restrictions of due process. *Advanced Tactical*, 751 F.3d at 800 ("Indiana's long-arm provision reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause") (cleaned up). Similarly, plaintiff alleges Ancestry failed "to obtain required consent from Class members in Indiana," (Compl. at ¶ 21), but this also cannot suffice for jurisdiction because plaintiff contends there was **no action** by Ancestry in relation to this allegation in Indiana. *See, e.g., McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021) ("Plaintiffs allege that both Defendants . . . failed to provide notice to and obtain consent from Illinois citizens. According to Plaintiffs, those failures 'necessarily occurred in Illinois.' The Court does not see why that must be true. '[I]t really makes no sense to assign a location for an act that did not occur.' More fundamentally, that

**Second,** plaintiff cannot allege Ancestry had "knowledge that the effects would be felt . . . in the forum state." *Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 893 (N.D. Ill. 2014). That the yearbook originated in Indiana says nothing of where the individual appearing in the yearbook resides *decades* later, yet that is the only connection between plaintiff and Indiana for which plaintiff's complaint can even arguably be read to allege Ancestry had knowledge.[6]

## II.   PLAINTIFF CANNOT ALLEGE A CONCRETE INJURY

Plaintiff cannot meet his burden to articulate a "concrete" injury that would establish Article III standing. *See Spokeo*, 578 U.S. at 338. Plaintiff does not identify anyone aside from his attorneys who searched for and viewed his yearbook information via Ancestry's website. Instead, plaintiff contends only that he is one of the "millions of other individuals" whose yearbook information is available and searchable on Ancestry's online databases. Compl. ¶ 5. Plaintiff could not plausibly have suffered an injury under these circumstances. *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021) ("mere existence of inaccurate information in a

---

argument depends on the assumption that Defendants were required to provide notice, publish policies, and obtain consent in Illinois. As stated above, however, Plaintiffs have not alleged any activity in Illinois that would impose such obligations on Defendants") (internal citations omitted); .

[6]    Two district court decisions in cases filed by plaintiff's counsel found personal jurisdiction over Ancestry, but neither compels a similar result here. *See Bonilla v. Ancestry.com Operations Inc.*, No. 20-C-07390, 2021 WL 5795306, at *4 (N.D. Ill. Dec. 7, 2021); *Sessa v. Ancestry.com Operations Inc.*, 2021 WL 4245359, at *4 (D. Nev. Sept. 16, 2021). In *Bonilla*, the court focused on plaintiff's allegation that Ancestry used his image in advertisements targeted toward Illinois. 2021 WL 5795306 at *3. Here, in contrast, the record establishes that Ancestry *never* targeted plaintiff's yearbook to users located in Indiana. Ex. A, Godfrey Decl. at ¶ 7. In *Sessa*, the court determined Ancestry "intentionally targeted all fifty states" by operating a universally-available website with yearbooks from schools across the country. 2021 WL 424535, at *8. This reasoning directly contradicts binding Seventh Circuit precedent. *be2 LLC*, 642 F.3d at 559 ("If the defendant merely operates a website . . . that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution").

database" does not confer standing); *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (no injury where leaked medical records were not accessed by anyone—it was implausibly "attenuated" to assume a thief would "select [plaintiff]'s report from the over 3,600 reports in the missing boxes"). However, even could plaintiff allege his information was searched or viewed, none of the purported "injuries" he asserts suffices under Article III. *See* Compl. at ¶¶ 19, 45, 46, 60-62.

*First,* plaintiff's claimed "privacy" interest is belied by the information at issue, which "is not private: it is public yearbook information distributed to classmates (and ultimately to Ancestry)." *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at*4 (N .D. Cal. Mar. 1, 2021). Indeed, plaintiff allowed this information to be published in the first instance and his own high school hosts full copies of yearbooks—including those at issue here—online for anyone to access.[7] Where, as here, the information is already public, its disclosure cannot result in an alleged "privacy" harm. *See, e.g., id.* at *4 n. 12; *Fus v. CafePress, Inc.*, 2020 WL 7027653, *3 (N.D. Ill. Nov. 30, 2020) (no concrete injury where "most of Fus's information possessed by CafePress at the time of the hack was publicly available"); *Mirfasihi v. Fleet Mortg. Corp.*, 2007 WL 2066503, at *4 (N.D. Ill. July 17, 2007), *aff'd*, 551 F.3d 682 (7th Cir. 2008) ("Because the information disclosed was already a matter of public record . . . FMC's disclosure could not have caused any harm.").

---

[7]     Marion High School: Yearbooks, *available at* https://marion.touchpros.com/flipbookyear.aspx?tabid=2232 (online, digital copies of high school yearbooks from 1942-2019) (last visited May 10, 2022). The records from the 1998 and 1999 yearbooks at issue here can be accessed at pages 111 of the 1998 yearbook (115 of the pdf) and pages 45, 51, and 80 of the 1999 yearbook (all indexed on page 184). This website can be judicially noticed as a matter that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Alvarez v. Atl. Richfield Co.*, 2021 WL 3161461, at *2 (N.D. Ind. July 26, 2021) (taking judicial notice of existence and content of website).

**Second,** any alleged benefit to Ancestry cannot provide the necessary injury in fact—a defendant's alleged gain does not mean the plaintiff suffered a loss of his own. *E.g.*, *Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015) ("a plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss"); *Callahan*, 2021 WL 783524, at *4 ("Ancestry's using the public profiles to solicit paying subscribers—standing alone—does not establish injury."); *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *4 (W.D. Wash. June 1, 2012) ("It is not enough to allege only that the information has value to Defendant; the term 'loss' requires that Plaintiffs suffer a detriment."). That Ancestry might benefit from the information does not mean plaintiff has suffered a loss, which is required to allege injury.

**Third,** plaintiff's claimed injury based on his purported "property" interest in the information fails because he has identified no commercial interest that has been harmed by Ancestry's use. For example, plaintiff has not alleged Ancestry's use inhibited his own sale of his yearbook information to others or that he was otherwise deprived the value of these records. As in *Callahan*, plaintiff does "not have a commercial interest in [his] public profile[] that precludes Ancestry's use of the profile[] for commercial gain." 2021 WL 783524 at *5.

**Fourth,** the purported statutory violation, standing alone, does not create a "concrete injury" for purposes of Article III standing. As the Supreme Court has recognized, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. Even where private information—as opposed to the publicly-available information at issue here—is protected by statute, the Seventh Circuit has consistently held more than a mere statutory violation is required for purposes of Article III standing: the violation must also cause some identifiable, concrete harm. *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13

(7th Cir. 2017) (cable subscriber alleged that Time Warner Cable had unlawfully retained private information he had provided in violation of the Cable Communications Policy Act, but without allegations of disclosure or misuse, this was insufficient for Article III standing); *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886-87, 889 (7th Cir. 2017) (plaintiff lacked standing to sue for a violation of the Fair Credit Reporting Act where the defendant obtained a credit report without providing the required disclosures; although the defendant's action violated plaintiff's privacy, it was merely a "statutory violation completely removed from any concrete harm or appreciable risk of harm"). In other words, that the violations made plaintiff "*feel* aggrieved" does not suffice. *Gubala*, 846 F.3d at 911 (emphasis in original).

Here, Indiana's right of publicity law and misappropriation tort make clear their purpose is to protect the pre-existing ***commercial value*** associated with an individual. Ind. Code § 32-36-1-8 (prohibiting certain use of "a ***personality's*** right of publicity") (emphasis added); Ind. Code § 32-36-1-6 (defining "personality" to mean only an attribute that "***has commercial value***") (emphasis added); Restatement (Second) of Torts § 652C (1977) ("In order that there may be liability under the rule stated in this Section, the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness."). Thus, to the extent the legislature intended to codify a right to protect against an injury, the injury contemplated necessitates some "commercial value" that is diminished by another's use. *Cf. Callahan*, 2021 WL 2433893 at *4 (rejecting plaintiffs' argument that a statutory violation was sufficient for standing where the legislature had codified an explicit injury requirement that plaintiffs could not otherwise satisfy); *TransUnion*, 141 S. Ct. at 2209 (plaintiffs analogized the alleged "harm" caused by the statutory violation to the harm recognized at common law for claims of defamation, but the Court rejected

this argument where plaintiffs could not allege an essential element of a defamation claim). Plaintiff does not allege diminution of a pre-existing "commercial value" in his name or image. Nor could he—this suit arises from republication of information previously published and readily available through other public sources.

**Finally,** plaintiff's allegations of mental injury consist solely of unsubstantiated conclusions lacking a supporting factual basis. *See, e.g.*, Compl. at ¶¶ 3 ("Plaintiff was seriously distressed to discover that Ancestry is using decades-old photographs of Plaintiff and the Class as children to advertise paid subscriptions to Ancestry.com."); 45 ("Ancestry's illegal use has left him worried and uncertain about his inability to control how his name and personality is used"). Such conclusory assertions are insufficient to allege an Article III injury. *See, e.g., Marzullo v. Nlmk Ind.*, 2021 WL 1089796 (N.D. Ind. Mar. 22, 2021) (rejecting as "insufficient to demonstrate a tangible injury-in-fact" plaintiff's conclusory claim the situation was "very stressful").

In all events, plaintiff's allegations of "mental injury" are entirely implausible—the yearbook excerpts at issue contain innocuous, factual information that plaintiff already chose to make public. Plaintiff cannot allege Ancestry misused this information in a manner that could plausibly have caused "serious distress." *See, e.g., Low v. Linkedin Corp.*, 2011 WL 5509848, *4 (N.D. Cal. Nov. 11, 2011) (rejecting argument that plaintiff suffered "embarrassment and humiliation caused by the disclosure of his personally identifiable browsing history" where only "his personal LinkedIn user identification number, associated with a social search for his own name," not any "embarrassing details," was transmitted to third parties").[8]

---

[8] The decisions in *Sessa* and *Bonilla* do not compel a different conclusion. In *Bonilla*, the court did not address whether plaintiff had alleged his name or likeness had "commercial value," and thus concluded a violation of the Illinois Right of Publicity Act, standing alone,

## III.    **PLAINTIFF FAILS TO STATE AN INDIANA RIGHT OF PUBLICITY CLAIM**

An IRPS claim requires the plaintiff to allege "use" of "an aspect of a personality's right of publicity" for "a commercial purpose" that "occur[red] within Indiana" without written consent. Ind. Code § 32-36-1-8(a) & § 32-36-1-1(a). Here, plaintiff fails to plead any violation occurred *within Indiana* or that there was a use of a ***personality*** within the meaning of the IRPS. Either of these failures disposes plaintiff's IRPS claim.

### A.   **Plaintiff Fails To Plead Any Act That Occurred Within Indiana**

The IRPS applies only "to an act or event that ***occurs within Indiana***, regardless of a personality's domicile, residence, or citizenship." Ind. Code § 32-36-1-1(a) (emphasis added). As shown in Part I, plaintiff cannot identify any act by Ancestry that occurred within Indiana. Each of his attempts to satisfy this requirement fails. *See* Compl. ¶¶ 21, 60.

***First***, plaintiff asserts Ancestry "cop[ied]" yearbook information from sources "located in Indiana." Compl. ¶¶ 21, 60. Although incorrect (*see* Ex. A, Godfrey Decl. at ¶ 5), this is also irrelevant. *See* Compl. ¶¶ 21, 60. The "act or event" that must occur in Indiana is the alleged violation of the statute: the "*use*" of an individual's likeness for certain purposes. Ind. Code § 32-36-1-8(a). Even had the yearbook information been obtained from Indiana, merely acquiring plaintiff's yearbook is not a "use" that could give rise to a claim and is thus insufficient to satisfy

---

could give rise to injury. 2021 WL 5795306 at *4. *Compare Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *8 (N.D. Ill. Aug. 29, 2017) ("unlike the laws of some states, the Illinois statute does not require that the plaintiff's identity have commercial value or intrinsic value") (cleaned up), *with* Ind. Code §§ 32-36-1-6, 32-36-1-8 (limiting claims to only those "personalities" whose likenesses have "commercial value"). In *Sessa*, the court similarly did not address an express "commercial value" requirement and further erred by ignoring the express "injury" requirement under the statute and common law to conclude a statutory violation (without any other claimed "injury") sufficed for purposes of Article III standing. 2021 WL 4245359 at *5-6. *Cf. Callahan*, 2021 WL 2433893 at *4 (recognizing the violation of certain statutes can give rise to injury, but rejecting this argument in the context of California's right of publicity statute, which "imposes liability only where 'persons [are] injured as a result'' and thus requires injury") (citation omitted).

the territoriality requirement. *See, e.g., Boshears v. PeopleConnect*, Inc., 2022 WL 888300, at *3 (W.D. Wash. Mar. 25, 2022) (the IRPS's "territoriality provision requires the 'act or event' occurring in Indiana to be the non-consensual commercial use of the personality").

**Second**, although plaintiff alleges in conclusory fashion that "Ancestry's display of Plaintiff's and Class members' photographs in advertisements displayed on Ancestry's website to users in Indiana" satisfies this requirement (Compl. ¶¶ 21, 60), he fails to allege that any user in Indiana actually viewed his yearbook records on Ancestry's site. *See Boshears*, 2022 WL 888300 at *3 (rejecting as insufficient a nearly identical allegation that defendant used plaintiff's "photographs in advertisements displayed on [defendant's] website to users in Indiana"). As plaintiff acknowledges, his yearbook records are displayed on Ancestry's website only if searched. *See, e.g.*, Compl. ¶ 6 ("***In response to searches*** for the Plaintiff's and Class members' names, Ancestry delivers a list of yearbook photographs in its possession") (emphasis added). Plaintiff has not alleged any such search was conducted in Indiana or that anyone in Indiana ever selected and viewed the records at issue. Plaintiff's conclusory assertion is insufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Third**, although plaintiff alleges Ancestry "fail[ed] to obtain the required consent from Plaintiff and Class members in Indiana," (Compl. ¶ 60), this once again ignores that violation of the statute requires an alleged *use* of the image. *Boshears*, 2022 WL 888300 at *3 ("the Court is unpersuaded that Classmates' failure to obtain Boshears' consent in Indiana satisfies the territoriality requirement. As explained above, the act or event occurring in Indiana must also include the use of the image in Indiana"). Further, this alleged ***omission*** cannot serve as the

purported ***act*** that occurred within Indiana. *See McGoveran*, 2021 WL 4502089, at *4 ("it really makes no sense to assign a location for an act that did not occur") (rejecting a similar argument).

***Finally***, plaintiff's claim the purported "harm" was felt in Indiana (Compl. at ¶ 60) "does not identify a non-consensual, commercial use of the image in Indiana" and thus cannot satisfy the statute's territoriality requirement. *Boshears*, 2022 WL 888300 at *3.

## B.  Plaintiff Fails To Plead Use Of A "Personality"

The IRPS states that "[a] person may not use an aspect of a ***personality's*** right of publicity" in certain circumstances and without consent.  Ind. Code § 32-36-1-8 (emphasis added).  In turn, the IRPS defines "personality" as a "living or deceased natural person whose: (1) name; (2) voice; (3) signature; (4) photograph; (5) image; (6) likeness; (7) distinctive appearance; (8) gesture; or (9) mannerisms; ***has commercial value***."  Ind. Code § 32-36-1-6 (emphasis added).

Plaintiff has not pleaded any facts to support an assertion that his name or likeness has "commercial value."  Nor can Ancestry's alleged use of plaintiff's yearbook record for "commercial purposes" satisfy this element—the statute prohibits use "***for a commercial purpose***" only where the alleged information at issue "has commercial value.  Ind. Code § 32-36-1-8 (emphasis added); Ind. Code § 32-36-1-6.  Were it the case that any use for "commercial purpose" automatically satisfied the "commercial value" requirement, the latter would be rendered improper surplusage.  *See, e.g., Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1842 (2018) (courts must interpret statutes to give effect to all provisions).

# IV.    PLAINTIFF FAILS TO PLEAD A COMMON LAW MISAPPROPRIATION CLAIM

**No Commercial Value.**  Misappropriation requires that "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other *values* of the plaintiff's name or likeness."  Restatement (Second) of Torts § 652C at comment c (1977) (emphasis added).  Accordingly, a plaintiff must allege facts that support finding some pre-existing value associated with plaintiff's name or likeness.  Here, as shown in Sections II and III.B, plaintiff has not (and cannot) plausibly allege the appearance of his name or likeness in public yearbook records has such value.  Plaintiff's misappropriation claim must therefore be dismissed.

**Incidental Use.**  "The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities."  Restatement (Second) of Torts § 652C at comment d; *see also, e.g.*, *Vinci v. Am. Can Co.*, 69 Ohio App. 3d 727, 729 (Ohio Ct. App. 1990) ("The value of the plaintiff's name is not appropriated by mere . . . reference to it in connection with legitimate mention of his public activities . . . The reference to the athletes and their accomplishments was purely informational; there was no implication that the athletes used, supported, or promoted the product. . . . Reference to the athletes' names, likenesses, and identities was merely incidental, historical information."); *Balsley v. LFP, Inc.*, 2010 WL 11561844, at *9 (N.D. Ohio Jan. 26, 2010) (use of a plaintiff's photograph—which captured her appearance in a "wet T-shirt" contest and stated she resigned from her job after the "topless shots . . . surfaced all over the Internet"—contained "historical information" and use was thus incidental because "the photograph . . . does not imply that she uses, supports, or promotes Hustler magazine").  Here, plaintiff alleges only that

Ancestry hosted excerpts from his high school yearbook, which undoubtedly reflect his "public activities." Accordingly, the alleged "use" is "incidental" and cannot give rise to a misappropriation claim.

## V. PLAINTIFFS' CLAIMS FAIL BECAUSE THE ALLEGED USE IS EXCEPTED UNDER THE LAW

### A. Plaintiff's Statutory And Common Law Claims Fail Because The Alleged Use Is "Newsworthy" And In Connection With Matters Of "Public Interest"

"The 'newsworthy value' exception provides that the right of publicity does not apply to '[t]he use of a personality's name, voice, signature, photograph, image, likeness" in "[m]aterial that has political or newsworthy value.'" *Daniels v. FanDuel, Inc.* (*Daniels II*), 109 N.E.3d 390, 393 (Ind. 2018); *see also* Ind. Code §§ 32-36-1-1(c)(1)(E), (c)(1)(B). Likewise, Indiana law exempts from liability any use "in connection with the . . . reporting of an event or a topic of general or public interest." Ind. Code § 32-36-1-1. These exceptions apply both to plaintiff's statutory and common law claim. *See, e.g.*, *Near E. Side Cmty. Org. v. Hair*, 555 N.E.2d at 1324, 1335 (Ind. Ct. App. 1990) (dismissing common law "privacy" claims where the information—the names and addresses of property owners—was publicly available and of to the public, in recognition that "the Supreme Court held that publication of truthful information, lawfully obtained, may only be punishable when tailored to a state interest of the highest order").

In assessing these exceptions, Indiana courts have consistently recognized they must "be construed broadly," using the "most liberal and far reaching terms." *Daniels II*, 109 N.E.3d at 392–93, 395–96. Whether the defendant is a media company or "news broadcaster[]" is immaterial. *Id.* at 394. Nor is it relevant whether the alleged use is for a commercial purpose.

*Id.* ("we are not persuaded that the statutory exception for newsworthiness does not apply in the context of commercial use").

Rather, "[t]he privilege of enlightening the public is by no means limited to dissemination of news in the sense of current events but extends far beyond to include all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." *Time, Inc. v. Sand Creek Partners, L.P.*, 825 F.Supp. 210, 212 (S.D. Ind. 1993). Here, Ancestry's republication of the yearbook records plainly fits within these broad exceptions.

The yearbooks at issue are "record[s] of the year's activities" at plaintiff's school.[9] In the same way that a clipping from a local newspaper documenting a town fair, or a vignette in Ken Burns' "Jazz" documentary featuring local club attendees, convey information about a particular time and place in history, so too, the yearbooks convey information about the history, culture, and ideas of communities at a particular time and place. Yearbooks are not only mementos of the time for those featured in them, they are also important resources for genealogical, historical, and cultural research. That yearbook records and access to them are "newsworthy" and of "public interest" is evident from the general, widespread collection and dissemination of yearbook information for public access. For example, yearbook information is publicly available through various paid and free sources, including the National Library of Congress.[10]

Whether users seek access to these yearbook records as a source of data for genealogical research or purely for entertainment purposes, the use fits squarely within these broad

---

[9] See Merriam-Webster Dictionary, Yearbook, https://www.merriamwebster.com/dictionary/yearbook (last visited May 10, 2022).

[10] See Library of Congress, https://www.loc.gov/resource/mss85590.041/?sp=1&r=-0.649,0.265,2.298,0.978,0 (last accessed May 10, 2022).

exceptions. *See, e.g., Daniels II*, 109 N.E.3d at 396 (newsworthy exception "is by no means limited to dissemination of news in the sense of current events but extends far beyond to include all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general"); *Daniels v. FanDuel*, 2017 WL 4340329, at *7–9 (S.D. Ind. Sept. 29, 2017), *aff'd* 909 F.3d 876 (7th Cir. 2018) ("*Daniels I*") ("factual data" that "could be used as 'reference sources,'" for purposes of playing a fantasy sports game or for information about college sports generally was matter of "public interest"). Indeed, "it would be strange law that a person would not have a first amendment right to use information that is available to everyone." *Daniels II*, 109 N.E.3d at 396.

### B. Plaintiff's Statutory Claim Fails Because The Yearbooks Constitute "Literary Works"

The IRPS does not apply to literary works or "[a]n advertisement or commercial announcement" for that work. Ind. Code §§ 32-36-1-1(c)(1)(A), (c)(1)(E). This exemption is construed "broadly" to "effectuate the General Assembly's obvious attempt to avoid potential constitutional infirmities with the statute." *Dillinger, LLC v. Elec. Arts Inc.*, 795 F. Supp. 2d 829, 836 (S.D. Ind. 2011) (video games exempted from IRPS as "literary works"). The yearbook excerpts at issue here are "literary works" as commonly understood. *See, e.g.*, 17 U.S.C. § 101(7) (defining "literary works" as works "expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts . . . in which they are embodied"). In Indiana, where even video games fall into the definition of exempted "literary works" (*Dillinger*, 795 F. Supp. 2d at 836), yearbooks must also be exempted as literary works.

## VI. PLAINTIFF'S CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

Section 230 of the CDA provides: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This immunity encompasses each state-law claim plaintiff asserts. *See, e.g., Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 965-69 (N.D. Ill. 2009) ("Section 230 preempts contrary state law claims"); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (Section 230 barred right of publicity claim).

In a well-reasoned decision based on established standards for CDA immunity, *Callahan* determined Ancestry is immune from liability under the CDA and dismissed the complaint. *Callahan*, 2021 WL 783524, at *5. The same reasoning applies here.

It is undisputed that Ancestry is an "interactive computer service"—it owns and operates a website accessible to multiple users. Compl. at ¶¶ 6 (multiple users can access the public website), 1, 26 (Ancestry owns and operates the website at issue); 47 U.S.C. § 230(f)(2) (an "interactive computer service" is one that "provides or enables computer access by multiple users to a computer server").

It also cannot reasonably be disputed that Ancestry did not create the content from which plaintiff's claims arise—"Ancestry obviously did not create the yearbooks. Instead, it necessarily used information provided by another information-content provider and is immune under §230(c)(1)." *Callahan*, 2021 WL 2433893, at *5; Compl. at ¶¶ 42 (information at issue came from his school yearbooks); 43 (distinguishing Ancestry from "the authors who created his high school yearbooks"). Because Ancestry is an "interactive computer service" that published the third-party content that provides the basis for plaintiff's claims, it is immune under Section

230 from plaintiff's state-law causes of action. *Callahan*, 2021 WL 2433893, at *5-7.

Any attempt by plaintiff to wrest Ancestry into the "restrictive definition of 'information content provider,'" based on its role in uploading the information to the internet or reformatting the third-party content should be rejected. *See Goddard v. Google, Inc*., 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009). As *Callahan* determined, "[a]dding an interactive button and providing access on a different platform do not create content. They just add functionality. . . . Instead of creating content, Ancestry — by taking information and photos from the donated yearbooks and republishing them on its website in an altered format — engaged in a publisher's traditional editorial functions that do not transform an individual into a content provider within the meaning of § 230." 2021 WL 783524, at *6 (quotations, alterations omitted); *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (CDA immunity even where Yelp! took reviews from a different website and added a star rating); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415-16 (6th Cir. 2014) (selecting and republishing user generated content is not "creation or development," and facilitating the upload of content did not constitute "a material contribution to any defamatory speech" displayed); *Carafano*, 339 F.3d at 1124 (where "a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process").[11]

---

[11] Again, the district courts in *Sessa* and *Bonilla* departed from *Callahan* to conclude the allegations at issue did not give rise to CDA immunity. Both courts erred in their analyses, and this Court should instead follow the well-reasoned decision in *Callahan*. In *Sessa*, the court concluded, without citation to any authority, that "Ancestry alone is responsible for posting the material on its website after it receives the records from others. Section 230 immunity therefore does not attach." 2021 WL 4245359 at *10. This conclusion is at odds with the language and purpose of the CDA, which was enacted precisely to immunize such publishing activities. *See, e.g., Bennett v. Google, LLC*, 882 F.3d 1163, 1168 (D.C. Cir. 2018) ("Although 'other types of publishing activities might shade into creating or developing content,' the decision to print or retract is fundamentally a publishing decision for which the CDA provides explicit immunity."). *Sessa* further determined CDA immunity applies only where the "original" content creator—*i.e.*,

Here, as in *Callahan*, plaintiff's claims arise entirely from third-party content and Ancestry is thus immune.

## VII.   **THE COPYRIGHT ACT PREEMPTS PLAINTIFF'S CLAIMS**

Section 301 of the Copyright Act preempts state law claims if: (1) "the work in which the right is asserted" is "fixed in tangible form" and (2) the asserted right is "equivalent to" the reproduction, performance, distribution, or display of works or preparation of derivative works. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (to avoid preemption,

---

the yearbook authors—intended the information to be published online. 2021 WL 4245359 at *11. However, as *Callahan* correctly determined, "no case supports the conclusion that § 230(a)(1) immunity applies only if the website operator obtained the third-party content from the original author." *Callahan*, 2021 WL 2433893 at *6. *Sessa* reached a contrary result based on its misreading of the Ninth Circuit's decision in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). *See Sessa*, 2021 WL 4245359 at *11. But *Batzel* itself recognized "the focus should be ***not*** on the information provider's intentions or knowledge," but instead on whether "a reasonable person in the position of the service provider or user would conclude that the information was provided for publication on the Internet[.]" *Batzel*, 333 F.3d at 1034 (emphasis added). Accordingly, *Batzel* "withdrew protection only for those internet service providers who would publish on the Internet *private* communications the provider knew or had reason to know were never intended to be published at all." *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1110-11 (C.D. Cal. 2004), *aff'd on CDA grounds* 488 F.3d 1102 (9th Cir. 2007).

In *Bonilla*, the court concluded CDA immunity could not be established at the pleading stage because plaintiff "alleged that Ancestry collected and organized records and subsequently used Plaintiff's and the putative class members' names, likenesses, and identities in these records they curated for commercial gain." *Bonilla*, 2021 WL 5795306 at *4. However, as with the first prong of the *Sessa* analysis, this conclusion ignores the crux of the CDA inquiry—whether Ancestry created the content on which the claims are predicated. *See O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 354-55 (6th Cir. 2016). That Ancestry published the content or that it operates for a profit are simply not relevant to whether the CDA applies. 47 U.S.C. § 230; *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020) ("insofar as Plaintiffs assert that Section 230 does not protect Facebook's 'data mining' efforts because they 'generate billions in revenue,' [ ] there is no 'for-profit exception to § 230's broad grant of immunity' . . . The 'fact that a website elicits online content for profit is immaterial'") (citations omitted).

claims must be "distinct from copyright protections").

Preemption "makes sense" where "the alleged use of the plaintiff's identity is confined solely to that plaintiff's performance in a copyrighted work, the entirety of the 'identity' in question really is fixed in the recorded performance—a tangible medium of expression." *Dent v. Renaissance Mktg. Corp.*, 2015 WL 3484464, at *4 (N.D. Ill. June 1, 2015). Under those circumstances, the claim is preempted because it is the equivalent of a right governed by the Copyright Act. *E.g., Villa v. Brady Pub.*, 2002 WL 1400345, at *4 (N.D. Ill. June 27, 2002) ("the essence of the behavior with which Villa truly takes issue is the reproduction, distribution, and display of his artwork without his permission . . . Accordingly, the state-law claims . . . would be preempted"); *Glovaroma, Inc. v. Maljack Prods., Inc.*, 1998 WL 102742, at *6 (N.D. Ill. Feb. 26, 1998) (misappropriation claim was preempted where it was based on distribution of his videotaped works); *Brode v. Tax Mgmt., Inc.*, 1990 WL 25691, at *10 (N.D. Ill. Feb. 1, 1990) (preemption where claim was based on distribution of copies of portfolio).

For example, in *Baltimore Orioles*, baseball players asserted misappropriation claims based on the broadcasting of games in which they appeared. 805 F.2d at 665-66, 675. Because the players claimed "their rights of publicity permit them to control telecasts of their performances, and that televised broadcasts of their performances made without their consent violate their rights of publicity in their performances," the Seventh Circuit held those claims were equivalent to rights contained in the copyright of the telecasts, and were thus preempted. *Id.* at 677. Similarly, in *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1012–13 (9th Cir. 2017), plaintiffs alleged a defendant exploited their names and likenesses for commercial purposes and asserted right of publicity claims based on the sale of licenses permitting customers to download photographs of plaintiffs. 853 F.3d at 1007. The claims were preempted because plaintiffs

identified no "use of their names or likenesses independent of the display, reproduction, and distribution of the copyrighted images in which they are depicted." *Id.* at 1008-09.

Here, each factor for copyright preemption is satisfied. Plaintiff's "identity" here is wholly "fixed" in a tangible medium of expression: the yearbooks. *See* 17 U.S.C. § 101 (yearbook images' "embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.")[12] *See* 17 U.S.C. § 101. And as in *Baltimore Orioles* and *Maloney*, although plaintiff frames his claims in terms of Ancestry's "use" of his name and likeness, he identifies no "use" of his name or image beyond its appearance in the yearbook excerpts—in substance, plaintiff challenges only Ancestry's provision of *access* to his copyrighted yearbooks.[13]

Plaintiff cannot obtain through this lawsuit what he has never had—a copyright limiting reproduction, distribution, and display of his yearbook. *See Baltimore Orioles*, 805 F.2d at 679 ("the Players have attempted to obtain *ex post* what they did not negotiate *ex ante*. . . . a joint or an exclusive interest in the copyright of the telecasts"). Because plaintiff bases his right of

---

[12] Yearbooks are within the "subject matter of copyright." See 17 U.S.C. §§ 102-103 (copyright protection for "original works of authorship fixed in any tangible medium of expression," including "compilations"). In any event, even if the yearbooks were not entitled to copyright protection (they are), the scope of preemption is broader than the scope of copyright protection. *Toney*, 406 F.3d at 911 ("state laws that intrude on the domain of copyright are preempted even if the particular expression is neither copyrighted nor copyrightable"); *see also United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997) ("the shadow actually cast by the Act's preemption is notably broader than the wing of its protection").

[13] Although plaintiff makes a conclusory assertion that the public might believe plaintiff "endorse[s] Ancestry's subscription product," (Compl. at ¶ 9), this claim is not supported by any factual allegations and it is contradicted by the screenshots in the complaint, which do not contain any suggestion of endorsement. *Id.* at ¶¶ 34–40. Merely stating that yearbook images of an individual might be available is akin to a company with a vast catalogue of sports posters informing prospective purchasers that posters depicting Tiger Woods or Serena Williams are available—that use does not suggest Woods or Williams "endorse" the poster company. *See Callahan*, 2021 WL 783524, at *5 ("Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products").

publicity claim on nothing more than Ancestry's reproduction, display, and distribution of his name and image as fixed within his yearbooks, plaintiff's statutory and common law right of publicity claims are preempted by the Copyright Act.[14]

## VIII.   THE ANTI-SLAPP STATUTE PROTECTS ANCESTRY FROM LIABILITY

Indiana's anti-SLAPP statute provides a defense to civil claims where the complained of act is made in furtherance of the person's constitutional right of free speech, in connection with an issue of public interest, and was made "in good faith and with a reasonable basis in law and fact." *Daly*, 542 F. Supp. 3d at 867; Ind. Code § 34-7-7-2.

Here, Ancestry's provision of access to the yearbook records is an act "in furtherance of free speech." *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct.").

And, for the reasons in Part IV, Ancestry's publication of the yearbooks is a matter of public interest, which is interpreted broadly under both the IRPS and the anti-SLAPP statute. *See, e.g.*, *CanaRx Servs., Inc. v. LIN Television Corp.*, 2008 WL 2266348, at *7 (S.D. Ind. May 29, 2008) ("In Indiana, the public interest is necessarily broad and . . . a panoply of topics [are] within the scope of public interest"); *Pack v. Truth Publ'g Co.*, 122 N.E.3d 958, 965 (Ind. Ct. App. 2019) ("speech is in connection with a matter of public concern if it is addressed to any matter of political, social, or other concern to the community, as determined by its content, form, and context.") (citation omitted). As discussed in Part IV, yearbooks and access to them are of

---

[14]   *Sessa* and *Bonilla* each concluded plaintiff's claims were not preempted under the Copyright Act, but neither identified a "use" of plaintiff's names or likenesses that differed from Ancestry's display or distribution of the copyrighted yearbook. *Sessa*, 2021 WL 4245359 at *15; *see also Bonilla*, 2021 WL 5795306, at *6.

interest to the public for many reasons, including as sources of entertainment and genealogical, cultural, and historical research; they give insight to community activities of the time.

Ancestry's speech was also made in good faith and with a reasonable basis in law and in fact. Although courts have not had occasion to address this issue in the right of publicity context, "[i]n the context of defamation law, 'good faith' has been defined as a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable." *Daly*, 542 F. Supp. 3d at 868. At issue here is Ancestry making yearbooks searchable and available in its online databases—*i.e.*, the further dissemination of already public information. There is no serious question that there was any bad faith involved in Ancestry's conduct. *See, e.g., Daniels II*, 109 N.E.3d at 396 ("it would be strange law that a person would not have a first amendment right to use information that is available to everyone")

## CONCLUSION

For the foregoing reasons, Ancestry's motions should be granted.

Dated: May 10, 2022          Respectfully submitted,

                    */s/ John A. Conway*

                    John A. Conway
                    **SOUTHBANK LEGAL**
                    100 E. Wayne Street, Suite 300
                    South Bend, IN 46601
                    Phone: (574) 968-0760
                    Fax: (574) 968-0761
                    jconway@southbank.legal

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Shon Morgan (*pro hac vice*)
John W. Baumann (*pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Phone: (213) 443-3000
Fax: (213) 443-3100
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

Cristina A. Henriquez (*pro hac vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Phone: (650) 801-5000
Fax: (650) 801-5100
cristinahenriquez@quinnemanuel.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that on May 10, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to all counsel of record.

                             /s/ *John A. Conway*
                             John A. Conway